Madden & Denny, of Crockett, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was prosecuted and convicted of burglary, and his punishment assessed at five years' confinement in the penitentiary.

[1] Appellant filed a written request that the court submit to the jury the question of suspension of his sentence in case he was found guilty. Appellant was charged with burglary of a private residence at night, and convicted of that offense. By the terms of the suspended act he was not entitled to have that question submitted to the jury, for it provides that the law shall not apply to that character of offense; therefore the court did not err in refusing to submit that issue to the jury.

[2] The evidence clearly shows that appellant entered the private residence of W. D. Granbury in the nighttime, for he was detected by Mr. Granbury and arrested by him. He does not deny this fact, but says he was so drunk he did not know what he was doing, and he introduced several witnesses to prove that he was so intoxicated that he did not know what he was doing. However, Mr. Granbury and Mr. Leaverton testify that, while appellant was drinking, he had not reached that state of intoxication which rendered him incapable of knowing what he was doing, thus making that an issue of fact. The charge was that he entered this house with the intent to commit the crime of theft. If he intended to steal, he was detected before accomplishing that purpose and arrested. The court, among other things, instructed the jury: "If you believe ·from the evidence that the defendant's mind was so much affected by drink as to make him incapable of forming an intent when he entered the house, if he did enter the house, and that when he so entered the house, if he did, he did not at the time of such entry, if any, have sufficient mind or discretion to form an intent, then you will acquit the defendant." He instructed them also that, before they would be authorized to convict, they must believe beyond a reasonable doubt he entered the house with the intent to commit the crime of theft. The jury finds adversely to appellant's contention, and we do not feel authorized to disturb their verdict.

The judgment is affirmed.

#### On Motion for Rehearing.

[3] Appellant has filed a motion for rehearing, insisting that the indictment charged that he broke and entered the house with the intent to steal, and, as at the time he was detected he had stolen nothing, the evidence is insufficient. The evidence discloses that the kitchen door was broken in law, the door being opened and an entry made therein, his tracks being found inside the kitchen, although he was on the gallery when Mr. Granbury found him. But prior to this time appellant had been heard making a noise in the kitchen or in opening the door of the kitchen. The fact that he had not, when detected, in fact stolen anything would not entitle him to an acquittal, for when one at night, by stealth, enters the private residence of another, with no right to do so and no legal excuse for so doing, the evidence of intent to steal may be slight and circumstantial, if there is nothing to indicate that the entry was made with any other intent. Alexander v. State, 31 Tex. Cr. R. 362, 20 S. W. 756; Mullens v. State, 35 Tex. Cr. R. 149, 32 S. W. 691; Smith v. State, 51 Tex. Cr. R. 427, 102 S. W. 406.

The motion for rehearing is overruled.

---

#### McCLARY v. STATE.

(Court of Criminal Appeals of Texas. April 1, 1914.)

1. CRIMINAL LAW (§ 380*)—EVIDENCE—CHARACTER OF ACCUSED.

In a prosecution of a woman for arson, evidence was not admissible that witness, who roomed at accused's house at the time of the fire, saw accused and a man together in the house, and knew that they roomed together.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 843, 845; Dec. Dig. § 380.*]

2. ARSON (§ 28*)—ADMISSION OF EVIDENCE.

Evidence was not admissible, in a prosecution for burning a house in which accused lived, that witness saw accused with a certain dress on which she made since the fire, unless it were shown that the particular dress was included by accused in her statement of loss from the fire.

[Ed. Note.—For other cases, see Arson, Cent. Dig. §§ 56–61, 63; Dec. Dig. § 28.*]

Appeal from Criminal District Court, Dallas County; Robt. B. Seay, Judge.

Minnie McClary was convicted of arson, and she appeals. Reversed and remanded.

Pierson, House & Pierson and M. M. Brooks, all of Dallas, for appellant. 'C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted of arson, and her punishment assessed at five years' confinement in the state penitentiary.

The appellant earnestly insists that the evidence will not support the conviction. We have read the record carefully, and, while the state's case depends wholly upon circumstantial evidence, yet we would not feel authorized to disturb the verdict on this ground of the motion.

However, in a bill of exceptions it is shown that the assistant county attorney, in his closing argument, said: "The fire records of the city of Dallas show that there is an average of 92 fires a month, and that 90 per cent. of this number are illegal burnings, 75 per cent. of that number are burned by the hands of women, and the only way to prevent it or

stop it is to convict this woman. The question is: Have you the nerve to do it?" Attached to the bill is a statement of Mr. Curtis, who made the argument, and he says: "While I cannot state that I used the exact language set out in the bill, nor do I now remember just what language I did use, I said something about the number of fires in Dallas, and the great majority were set by women, when Ellis P. House, attorney for the defendant, excepted to such remarks. *There was no testimony to support such remarks*, and, the court having returned to the bench, I said, 'Your honor, I have gone out of the record, and I am sorry of it, and will not do it again—I beg counsel's pardon.' The court said, 'Go ahead with your argument.'" The court shows he was temporarily off the bench, but, when the controversy arose, he resumed his place, when the assistant county attorney made the apology as stated by him. Would this apology remove the evil of such inflammatory remarks? As said by the assistant county attorney, there was no basis for such remarks in the testimony. There was no evidence as to the number of fires occurring in Dallas, no evidence as to the proportion that was illegal, and no evidence as to the per cent. of illegal fires set by women. But, if all this were true, this would be no reason why this defendant should be convicted, unless she was guilty of arson herself. Taking the apology into consideration, this alone might not present reversible error, as the record is presented to us; but we do hope that prosecuting officers will cease injecting new testimony into the case in their argument, and will discuss the evidence adduced and the legitimate deductions flowing therefrom. We know how, in the heat of debate, one is prone to forget himself, and we have looked with some leniency on such matters, where one is promptly stopped upon objections being made, and the jury is instructed not to consider it; but in this instance no such instructions were given orally or otherwise, the court perhaps thinking the apology of the county attorney sufficient.

[1] In another bill it is shown that Mrs. Slaughter testified: "I have known of Mrs. McClary for about two years. I roomed with her about a month or five weeks. I moved there about the last of February, and I think I moved away somewhere about the 1st of April, I think, the best I can remember. I was not there during the fire; I moved away about the 1st of April. They had a fire, I believe, in July. I roomed upstairs, too. I had my two daughters there. I was a widow, but am not now. Mr. Mills' room was right next to mine, upstairs. I guess they roomed together; I just suppose—I know they did. I saw them together. I heard her go to his room at night. I don't know a thing on earth about the fire. That's all I know about the case." It is true that Mr. Mills was also in-

dicted, charged with this offense, and the court submits the law of principals—that all persons present who participate in the offense would be guilty, and the record would suggest that, if one was guilty of the offense, perhaps the other was also guilty, as it is shown they left the house a short time before the fire, yet we do not understand that, if they were guilty of a criminal liaison in March prior to the fire, this would tend to show that Mrs. McClary was guilty of arson in July. She may be an immoral woman, as Mrs. Slaughter's testimony would suggest; but this would not be an admissible circumstance to show she was guilty of arson when she did not testify in the case.

[2] In another bill it is shown that Mrs. Wright testified to seeing Mrs. McClary with a certain messaline dress on that she made since the fire. Appellant objected to this testimony, on the ground that there was no testimony that Mrs. McClary had testified in her examination by the insurance adjuster that this dress was burned, or that she rendered it in her claim for damages made to the insurance company. The record is not very clear on this issue, and on another trial, if it is not shown that this was one of the dresses which she included in her loss statement, this part of Mrs. Wright's testimony should not be admitted.

In another bill it is shown that, when the prosecuting attorney offered certain documentary evidence—proof of loss, and testimony adduced thereon by the adjuster, etc.—the defendant's attorney objected thereto on various grounds. The court said, "You have got to establish that better than this," when the prosecuting officer said, "I will establish it by Mr. Mills;" and on this promise the court admitted the testimony, yet the record discloses Mr. Mills was not called as a witness nor any one else to prove these facts. This documentary evidence is all admissible if properly proven up, and we will comment no further, as on another trial doubtless this proof will be made.

There are other matters complained of in the record especially alleging newly discovered testimony; but we do not deem it necessary to discuss it, for it will not be newly discovered on another trial.

On account of the above matters, the judgment is reversed, and the cause remanded.